**CULVER et al. v. MIEARS et al.**

No. 2719.

Court of Civil Appeals of Texas. Eastland.

April 15, 1949.

Rehearing Denied April 29, 1949.

Wilkinson & Griffin, of Brownwood, Wynne & Wynne, of Wills Point, and Gist & Wilson, of Tyler, for appellants.

Turner & Seaberry, of Eastland, for appellees.

LONG, Justice.

On the 18th day of March, 1948, the trustees of Leon Common School District No. 70 in Comanche County, with the consent and approval of the County Board of School Trustees of said County, executed and delivered to C. V. Culver and S. S. Powers an oil and gas lease covering three acres of land belonging to said common school district. This suit was instituted by S. D. Miears as a tax paying land owner, joined by other interested parties, to cancel said oil and gas lease on the ground that the provisions of Article 5400a, Vernon's. Revised Civil Statutes, were not complied with in making said lease and that the same was therefore void. In a trial before the court without a jury, judgment was entered sustaining the position of plaintiffs and cancelling said lease. The defendants have appealed.

The facts are undisputed. The question here presented is, was it necessary for the trustees, in making the oil and gas lease, to comply with the provisions of Article 5400a which, beginning with the caption of the Act, are as follows:

· "An Act authorizing political subdivisions of the State of Texas to lease lands owned by such subdivisions for mineral development purposes and prescribing the method and manner of making such leases, and declaring an emergency.

"Art. 5400a, Section 1. Political subdivisions which are bodies corporate with recognized and defined areas, are hereby authorized to lease for mineral development purposes any and all lands which may be owned by any such political subdivision.

"Sec. 2. The right to lease such lands shall be exercised by the governing board, the commission or commissioners of such political subdivision which are by law constituted with the management, control, and supervision of such subdivision, and when in the discretion of such governing body they shall determine that it is advisable to make a lease of any such lands belonging to such district of subdivision, such governing body shall give notice of its intention to lease such lands, describing same, by publication of such notice in some newspaper published in the county, having a general circulation therein, once a week for a period of three (3) consecutive weeks, designating the time and place after such publication where such governing body will receive and consider bids for such mineral leases as such governing body may determine to make. On the date specified in said notice, such governing board or body shall receive and consider any and all bids submitted for the leasing of said lands or any portions thereof which are advertised for leasing, and in the discretion of

such governing body shall award the lease to the highest and best bidder submitting a bid therefor, provided that if in the judgment of such governing body the bids submitted do not represent the fair value of such leases, such governing body in their discretion may reject same and again give notice and call for additional bids, but no leases shall in any event be made except upon public hearing and consideration of said bids and after the notice as herein provided.

"Sec. 2a. Provided that all such leases may be granted by public auction and that no leases shall be executed in any case except and unless the lessor shall retain at least one-eighth royalty, provided further that in no case shall the primary term of said lease be for more than a period of ten (10) years from the date of execution and approval thereof." Acts 1937, 45th Leg., p. 568, ch. 279.

It was agreed between the parties upon the trial of this case that (a) said District No. 70 was a political subdivision and a body corporate with a recognized and defined area; (b) the trustees in making said lease did not comply with the provisions of art. 5400a; (c) the trustees did not publish or cause to be published any notice of intention to lease the land for oil and gas development in any newspaper published in Comanche County; (d) at all times during 1948 there were two newspapers being published in said county; (e) the trustees of said school district had control and management of said political subdivision.

It is the contention of defendants that it was not necessary for the trustees to comply with the provisions of art. 5400a in making the lease; that they complied with art. 2753, said article reading as follows: "The trustees of any school district, upon the order of the county trustees prescribing the terms thereof, when deemed advisable, may make sale of any property belonging to said school district, and apply the proceeds to the purchase of necessary grounds, or to the building or repairing of schoolhouses, or place the proceeds to the credit of the available school fund of the district."

It will be observed that under Article 2753 the trustees of any school district, upon the order of the county trustees prescribing the terms thereof, may make sale of any property belonging to said school district. It is the contention of the defendants that an oil and gas lease being an interest in real estate, that the trustees had the right to make said lease by virtue of the above Article.

■ At the time Article 5400a was enacted, Article 2753 was in effect. Article 5400a did not repeal Article 2753. The defendants contend, therefore, that Article 5400a had no application to common school districts and did not supersede Article 2753 relating to the sale of property belonging to said districts and that the trustees having complied with said article the oil and gas lease is valid. The Legislature, under its police powers, was authorized to enact Article 5400a prescribing the mode and manner of executing oil and gas leases by a political subdivision for the protection of the interest of the school. Before its enactment, there was nothing to prevent the trustees from leasing land belonging to the district for a long period of time. There was no limitation as to the primary terms of such oil and gas leases. In fact, the term could be for 100 years or forever. There was no provision for the amount of royalty to be retained under the lease. There was nothing to prevent the trustees of a common school district from making a lease wherein less than one-eighth royalty was retained. There was no provision for advertising for bids for the oil and gas leases. It is our belief that the Legislature thought it would be to the best interest of the people that some limitation be placed upon the length of the primary terms for which an oil and gas lease could be executed. Further, that there should be some provision as to the amount of royalty to be retained therein and that the giving of notice in a newspaper published in the county where the land was located would bring about competitive bidding and cause the land to bring more money and thus produce more revenue for the school districts and other political subdivisions.

■ To our minds there is no conflict between Article 5400a and Article 2753. The trustees of a common school district, with the approval of the county board of

trustees, can sell land belonging to the school district but if the trustees see fit to make an oil and gas lease upon the property, it is necessary that they advertise for bids. The primary term of the lease cannot be for more than ten years, and at least one-eighth royalty must be retained. Under the rules of statutory construction, statutes in pari materia should be construed together and where one statute deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible. However, if there is any conflict the latter will prevail, regardless of whether it was passed prior or subsequent to the general statute, unless it appears that the Legislature intended to make the general act controlling. We can see no conflict between Article 5400a and Article 2753. They both deal with the same subject matter to a certain extent but Article 5400a deals specifically with oil and gas leases made by a political subdivision. We can see no difficulty in harmonizing them. Article 5400a lays down what we consider reasonable requirements which must be met by the board of trustees when making an oil and gas lease, whereas, Article 2753 prescribes a method to be followed in making an outright sale of land belonging to a school district. It is our opinion that a common school district desiring to make a mineral lease on the property belonging to the district can easily comply with all the provisions of Article 5400a and Article 2753.

Defendants make the further contention that the title to the land in question having been acquired by Leon Common School District in 1917, long prior to the date of the oil and gas lease, that the Legislature had no control over said land and that the effort on the part of the Legislature to so control it by the enactment of Article 5400a violates the vested rights of said district in said land and the right to control its property under Article 1, Section 10 of the Constitution of the United States, and Article 1, Section 16 of the Constitution of Texas, Vernon's Ann.St. We cannot agree with this contention. The Legislature, by enacting Article 5400a, did not divest any of the vested rights of the school district in the land in question. All the Legislature did was to provide the way and manner by which an oil and gas lease should be made upon the land. The Legislature of Texas has enacted many similar statutes dealing with other questions affecting the public welfare.

Defendants make the further contention that the lease is valid by reason of the fact that the county board of trustees thereafter ratified the same. We cannot agree with this contention. The original lease being void, the subsequent ratification thereof by the county board of trustees was ineffective and could not vest title to the minerals in the defendants, Culver and Powers. Rue v. Missouri Pac. Ry. Co., 74 Tex. 474, 8 S.W. 533, 15 Am.St.Rep. 852; Wyatt Metal & Boiler Works v. Fannin County, Tex.Civ.App., 111 S.W.2d 787, (see authorities cited therein).

The oil and gas lease involved was one for mineral development purposes. It is a standard oil and gas lease and provides that the lessor "grants, leases and lets exclusively unto lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and other minerals," etc. The lease is for a primary term of ten years "and as long thereafter as oil, gas or other mineral is produced from said land," etc. It further provides for a specific royalty on oil and gas produced and on all other minerals mined and marketed. It has the further provision that if operations for the drilling of a well are not commenced within one year, the lease shall terminate unless delay rentals are paid covering the privilege of referring the commencement of drilling operations for twelve months. Further, there are provisions in the lease for dry holes and producing wells. It was a lease for mineral development as contemplated by Article 5400a. Leon Common School District No. 70 is a political subdivision with a defined area. It is our opinion that it was necessary before the trustees of said school district could make a valid oil and gas lease on the land involved, that they advertise for bids in a newspaper in Comanche County and comply with the pro-

visions of Article 5400a. This was not done.

It is, therefore, our opinion that the oil and gas lease involved is void and that the court properly entered judgment cancelling the same.

The judgment of the trial court is affirmed.